## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOSEPH DEMOUCHETTE, Jr., ERIKA FRANK, JORDAN FRANK, JOSEPH NUTTER-DEMOUCHETTE, by their Next Friend ARNELLA DEMOUCHETTE and ARNELLA DEMOUCHETTE, as Mother, Next Friend and Special Administrator of JOSEPH DEMOUCHETTE, deceased, | |
| Plaintiffs, | |
| v. | Case No.: 09 C 6016 |
| | Judge Manning |
| | Magistrate Judge Keys |
| SHERIFF OF COOK COUNTY THOMAS DART, in his official capacity, COOK COUNTY, a unit of local government, CORRECTIONAL OFFICER RICHARD MASON, #3474, in his individual capacity, CORRECTIONAL OFFICER SEAN ROBINSON, #5505, in his individual capacity, CORRECTIONAL OFFICER ANTHONY MARTILLO, #8900, in his individual capacity, JOHN DOE CORRECTIONAL OFFICERS AND SUPERVISORS, in their individual capacity, JOHN DOE EMPOLYEES OF CERMAK HEALTH SERVICES, in their individual capacities, | |
| Defendants. | |

## PLAINTIFFS' RESPONSE TO DEFENDANT COOK COUNTY AND SHERIFF DART'S MOTION TO BIFURCATE (Docket # 35)

Plaintiffs, through their undersigned counsel, respectfully respond to Defendant Cook County and Sheriff Dart's (herein after "Defendants") Motion to Bifurcate and Stay Discovery (Docket # 35). Defendants' motion should be denied because (1) bifurcation is not appropriate in a wrongful death action in accordance with the Seventh Circuit's decision in *Thomas v. Cook County*, 604 F.3d 293, 302-304 (7th Cir. 2010); (2) bifurcating and staying discovery would lead to duplicative discovery and increase the cost of litigation; (3) staying discovery would prejudice Plaintiffs. In support, Plaintiffs state as follows:

## I.    Introduction

In the Statement of the Case, Defendants failed to identify many of the allegations pertinent to their liability. In addition to the facts listed by Defendants, the following facts are among those relevant and necessary to evaluating Defendants' motion to bifurcate and stay discovery:

¶ 14. Demouchette was a heroin addict and had been in the Cook County Jail 3-5 times previously for charges related to his drug addiction.

¶ 26. Several inmates went to the dayroom and were yelling and pounding on the door for 20 to 30 minutes trying to get the attention of an officer to help Demouchette.

¶ 27. Officer Robinson walked down the hallway while on lunch and saw inmates on Tier 2-H banging on the window.

¶ 28. Officer Mason was not on Tier 2-H, so Robinson called over the radio for an officer to come to the Tier.

¶ 39. Defendants were deliberately indifferent to the suicide problem at Cook County Jail and failed to institute suicide prevention practices pursuant to

Constitutionally required standards, including a failure to provide; (1) appropriate suicide prevention policy or procedure; (2) suicide prevention education and training for its staff members; (3) appropriate screening to assess prisoner's suicide risk; (4) appropriate intervention addressing procedures of how to handle a suicide in progress; (5) appropriate notification, reporting, and review when suicides occur; and (6) appropriate cut-down tools to the correctional staff for quick response in the event of a suicide attempt by hanging.

¶ 40. Defendants failed to sufficiently supervise inmate Demouchette and other inmates to prevent suicide.

¶ 47. The Constitutional violations detailed above were caused by the customs, policies, and practices of the institutional Defendants, as promulgated, enforced, and disseminated by the official Defendants, whereby the institutions and official Defendants charged with ensuring adequate medical care and supervision to pre-trial detainees at Cook County Jail failed utterly to provide access to the most basic health care commensurate with a civilized society, in this case and many other cases.

¶ 48. These failures include:

(a) fostering an atmosphere at the Cook County Jail where correctional and medical personnel were encouraged to disregard serious medical needs of detainees; and

(b) knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable time frame, by (1) failing to provide any medical services in the night hours, (2) failing to have an adequate plan to respond to emergency medical needs, (3) failing to have a reasonably equipped or staffed emergency medical response team, (4) failing to have a system in place so that medical requests of detainees are reviewed promptly by properly trained medical staff and acted upon in a reasonable manner, (5) severely understaffing correctional officers at Cook County Jail, in violation of accepted practices and court orders, despite knowing that such understaffing greatly increases the chances that detainees' serious medical needs go untreated, (6) failing to correct serious safety problems such as broken video monitoring systems, despite knowing that such problems greatly increase the chances that detainees' serious medical needs go untreated; and

(c) failing to have an adequate assessment of incoming detainee's health situation by qualified physicians; and

(d) having inadequate medical staffing;

(e) encouraging the destruction of documents and false writing of reports to cover up inadequacies in the medical care of detainees, thus maintaining an atmosphere and climate where inmates' serious medical needs are ignored and Constitutional violations are not prosecuted or punished.

¶ 49. The conduct of Defendants was and became the custom and practice of Cook County and the Sheriff's Office.

¶ 53. The individual Defendants and the institutional Defendants, acting by and through their duly authorized agents and/or employees, owed Demouchette the duty to refrain from willful and wanton acts or omissions which could cause suffering or death to the decedent.

¶ 54. As detailed above, the defendants breached this duty by willfully and wantonly committing one, more, or all of the following acts or omissions:

(a) Deliberately ignoring the serious medical needs of the decedent;

(b) Failing to have mental health staff to supervise inmates;

(c) Having insufficient inmate supervision;

(d) Keeping inmates on extended lockdown periods which interferes with medical and mental health care;

(e) Failing to have appropriately trained staff in suicide prevention;

(f) Failing to have annual, specialized training;

(g) Failing to have adequate staffing;

(h) Failing to maintain their posts;

(i) Having a constitutionally impermissible policy of cross-watching tiers;

(j) Failing to timely respond to calls for assistance from the inmates;

(k) Failing to provide timely access to medical treatment for a serious condition of which they were aware;

(l) Otherwise acting willfully and wantonly toward decedent, in total and criminal disregard to his medical needs.

4

## II.    Bifurcation Is Not Appropriate In Wrongful Death Cases In Accordance With The Seventh Circuit's Decision In *Thomas v. Cook County*

Defendants argue that "[t]he Supreme Court has advocated limiting discovery as an appropriate means of controlling the significant and often unnecessary costs involved in litigating claims of municipal liability." (Defs.' Mot. at 2.) However, Defendants fail to acknowledge the Seventh Circuit's direction in *Thomas v. Cook County*, 604 F.3d 293, 302-304 (7th Cir. 2010) and rely completely on excessive force cases. (*See* Defs.' Mot at 6, n. 1.) A *Monell* claim may have the potential to deter future official misconduct which is itself "a proper object of our system of tort liability." *Terry v. Cook County Department of Corrections*, 2010 WL 2720754, * 2 (N.D. Ill. July 8, 2010). Therefore, as discussed below, bifurcation is inappropriate in this case.

Defendants' Motion to bifurcate and stay discovery should be denied because Cook County can be held liable even without individual liability. *Thomas v. Cook County*, is directly on point and explains the Seventh Circuit's road map in bifurcating failure to provide medical care and wrongful death cases. 604 F.3d at 302-304.

In *Thomas*, *supra*, the mother brought a §1983 action against the County, the Sheriff and other officers and medical technicians after her son died in the county jail from meningitis. There was a jury verdict of over four million dollars and the court denied the JNOV and motion for new trial by the defendants.

The County was found liable for its unofficial custom and practice that caused the constitutional harm and death of plaintiff; which was the failure to have a system in

place to allow for prompt review of inmates medical request forms, the practice of understaffing correctional officers, etc. *Thomas v. Cook County,* 604 F.3d at 302-304. As part of the motion of a new trial, defendants argued that it cannot be found liable under *Monell* because none of its employees were found to have violated Smith's constitutional rights. *Id*. at 303. The Court did not find this argument persuasive and it found the County's reliance of *Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571 (1986) distinguishable. *Id*. at 304.

The Seventh Circuit in *Thomas* held that the County's attempt to fashion a rule that requires individual officer liability before a municipal can ever be held liable for damages under *Monell* as an unreasonable extension of *Heller. Id*. The Court held that the actual rule in *Heller* is that a municipality can be held liable under *Monell* even when its officers are not, unless such a finding would create inconsistent verdicts. *Id*. Therefore, one must look at the nature of the constitutional violation, the theory of municipal liability and the defenses set forth. *Id*. In *Thomas,* Plaintiff alleged that the failure to timely respond to plaintiff's medical requests caused his injury and violated his right to due process. *Id*. at 303. Plaintiff needed to prove that 1) Plaintiff had a serious medical condition; 2) the defendant was deliberately indifferent to Plaintiff's serious medical needs; and that 3) the defendant's conduct caused harm to Plaintiff. *Id*. The Court found that a jury could have found that the County employees were not deliberately indifferent to plaintiff's medical needs, but simply could not respond

6

adequately because of the widespread and well documented breakdown in the County's retrieving of medical request forms. *Id*. at 304.

Therefore the verdict was not inconsistent even though the County employees were not found liable and the County was under *Monell.* In *Bell v. City of Chicago,* Judge Der-Yeghiayan denied the Defendant's motion to bifurcate pursuant to the 7th Circuit's road map set forth in *Thomas.* 2010 WL 432310, * 2 (N.D.Ill. 2010). Similarly, in *Terry v. Cook County, supra,* Judge Dow also denied Defendants' motion to bifurcate based on *Thomas*. 2010 WL 2720754, * 4.

Similarly, in the case at bar, a jury could find that the officers and medical professionals simply could not respond to plaintiff's requests for medical assistance in a timely fashion because of underfunding, which caused understaffing, leading to among other issues, requiring the officers to cross-watch the tiers. This is a documented concern from the John Howard Association and the Department of Justice. A jury could find the County liable for creating the environment in which the officers and medical personnel could do nothing more than they did. Therefore, the verdict would be consistent.

Furthermore, the Sheriff and other defendants have filed affirmative defenses in this case, including qualified immunity. (Docket # 17.) Thus, even if there was an absence of individual liability, the County could still be held liable. *See Lewis v. Downey* 581 F.3d 467, 478 (7th Cir. 2009) (to defeat qualified immunity, the plaintiff must

7

demonstrate that an individual defendant's conduct violated the plaintiff's constitutional rights and that the violated right was clearly established at the time of the misconduct). As the Court in *Thomas* noted, such defenses could allow for verdicts in which an individual was not liable, whereas the County was. Thus, even if the officers and personnel are not found liable, that would not be the end of the case against the County. Therefore, Defendants' motion to bifurcate should be denied as the Plaintiffs can succeed on their claims against the Sheriff and the County even if they do not succeed against the individual Defendants.

The defendants rely on *Nash v. County v. Will*, 2008 US Dist. Lexis 94304 (N.D. of Ill 2008), *Jones v. City of Chicago*, 1999 US Dist. Lexis 3358 (N.D. Ill 1999), *Myatt v. City of Chicago*, 816 F. Supp. 1259, 1264 (N.D. Ill. 1992). (Defs.' Mot. at 4-5.) In addition they cite numerous other cases in note 1 in support of their motion. (Defs.' Mot. at 6.) However all these cases deal with excessive force and, as stated in *Bell* and *Terry*, *supra*, all these cases were decided prior to *Thomas* and prior to the Seventh Circuit providing a road map for the courts to render such decisions.

Defendants are also incorrect in arguing that if Plaintiffs are awarded compensatory damages against the individual Defendants they would not be entitled to recover additional damages against the County. (Defs.' Mot. at 7.) If Plaintiffs were awarded zero because the jury found that the officers did not act with deliberate indifference, Plaintiffs could still recover additional compensatory damages against the

8

County if it is found liable. Thus, bifurcating the case would only cause waste of the court's time and resources, would not serve the interests of Rule 42(b), and would cause more inconvenience to the parties and witnesses since they would have to appear at two trials to testify about the same issues and would not serve the interests of justice for anyone. Therefore the Court should not bifurcate the case.

## III. Bifurcation Should Be Denied Because It Would Increase The Cost Of Litigation

Defendants incorrectly argue that the case should be bifurcated as "[s]taying discovery on policy claims serves the interests of convenience, economy and justice." (Defs.' Mot. at 2.) As discussed above, in Section II, a jury could find liability for Cook County even if they do not hold the individual defendants' liable. Moreover, Defendants mislead this Court regarding the burden of discovery in this case.

Defendants' argue that it would too burdensome to comply with discovery. However, Defendants fail to inform this Court that Plaintiffs' have been very accommodating in working to narrow the requests and that Defendant Cook County has already compiled similar discovery in *Thomas* and for the Department of Justice and the John Howard Association in recent years. Therefore, any discovery effort by the County would be minimal.

Defendants failed to respond to Plaintiffs' interrogatory requests within 30 days. Thus, Plaintiffs' counsel was required to follow up with a Rule 37.2 letter. (*See* Rule 37.2 letter from Attorney Sleper to Attorney Gallagher, attached hereto as Exhibit 1.)

9

Plaintiffs voluntarily narrowed their requests to facilitate discovery. Despite the fact that Defendants received this letter before they filed the instant motion, Defendants do not mention the letter and fail to cite to the revised requests in their motion. (Defs.' Mot. at 5-6.) Plaintiffs' requests are not overly broad, but are specifically tailored to proving liability for this incident, and should be answered by Defendants. Thus, Plaintiffs' document requests are not grounds to bifurcate this case. In fact, the fact that there are already discovery disputes shows that bifurcation would increase the cost and extent of litigation rather than decrease it. *See e.g.*, *Krueger Intern., Inc. v. Federal Ins. Co.*, 647 F.Supp.2d 1024, 1042 (E.D.Wis. 2009) ("Bifurcation and stay of liability issues can also give rise to unproductive disputes over the scope of the discovery allowed and lead to multiple depositions of the same witnesses, thereby increasing the time and expense required for both the parties and the court.")

Regardless of whether liability is found against the officers, the County will still need to respond to the discovery requests. It would not be in the best interest of any of the parties or the Court to stay the discovery and in fact, it would severely prejudice Plaintiffs' case in that they would be unable to procure adequate evidence necessary for the experts to provide opinions on. It would unnecessarily cause the Court to conduct two rounds of discovery, two rounds of motion practice, two trials at the same time inconveniencing all the witnesses and parties to appear at both trials, which would

merely add additional costs to the parties. The evidence of underfunding and staffing, training, etc. will be required in both cases, and the claims and defenses are the same.

Furthermore, Defendants have compiled similar documents for the *Thomas* case as well as for reports for the John Howard Association filed in the *Duran* case, and the investigation by the United States Department of Justice investigating Cook County during the same period complained of for the same issues – namely whether Cook County has a widespread practice and policy of failing to respond to medical requests in a timely fashion, as a result of underfunding and understaffing. (See report of the John Howard Association, attached as Exhibit 2; report of United States Department of Justice, attached as Exhibit 3.) These issues are relevant not only to the case against the County but also highly relevant in the individual officers' cases. In fact it would be in the best interests of the officers to have such information in the case as they could argue that they failed to respond because of a systemic lack of staff and funding.[1]

The County's claim that "the scope of this suit would reach far beyond comprehension birthing nothing but an endless cycle of expansion" are purely flag words which they hope that the Court will latch onto, without looking any further. The issues dealt with in the *Duran* Court and United States Department of Justice report are more expansive than the issues being dealt with in the case at bar. The discovery requests in the case at bar are narrowly tailored to deal with factors that contributed

---

[1] For this reason, as well as others, the State's Attorney's Office likely has a conflict in representing the Sheriff and the County as well as the individual officers.

and caused the lack of medical care alleged. These requests are surely within the comprehension of Defense counsel as they already have produced such documentation in other cases, which would make producing it to Plaintiffs in this case less onerous. Furthermore, such discovery was also allowed in the *Thomas* case, which shows that the County does have the resources to answer such discovery. As far as the depositions are concerned, Plaintiffs plan to only take depositions of persons with knowledge of the relevant issues. It is in Plaintiffs' best interest to only take depositions of those relevant parties and it would not do any good to take "endless" depositions. Moreover, this Court has instituted a strict discovery schedule. This schedule, along with the Federal Rules of Civil Procedure, works to limit the extent of discovery and/or depositions. Any further delay or structuring of discovery under this strict schedule would prejudice Plaintiffs.

### IV. Bifurcating This Case Would Greatly Prejudice Plaintiffs.

Bifurcating the *Monell* claims from the individual officers and employees' case would prejudice Plaintiff and their ability to prove their case. As the *Thomas* case makes clear, juries are able to examine the facts and determine whether the officers and employees were acting with indifference to the needs of Plaintiff or whether they were doing their best given the circumstances of which the County through understaffing and underfunding has created for them and the inmates within the Jail system. This can no more plainly be seen in a review of the John Howard and Department of Justice

reports which explain that this is what was going on during and before the time Plaintiff was incarcerated. (*See* Exs. 2 and 3.)

The complaint alleges that there was not an officer on the tier when Plaintiff died and that there was a delay in responding to the calls of the inmates for help. According to the standards and the Court monitors, as noted above, one of the primary reasons for delay in treatment of inmates is staffing which is a result of underfunding. (*See* Exs. 2 and 3.) This evidence is required to prove the damages in the individual case. This is evidence in which an expert will need to rely upon to determine whether the Jail breached the standard of care in staffing the jail to be able to timely respond to the Plaintiff's medical needs. The expert will need to examine the employee's personnel files to find out if they were qualified and had the required continued education courses. The expert will need to review the data to find out if the Jail was responding to deficiencies or not, and by not responding to them, made the injuries to the Plaintiff at bar inevitable. By staying discovery, all such evidence will be unavailable and Plaintiffs will be limited to a one time event which by itself fails to explain the entire story of Mr. Demouchette's death. This is exactly what defendants want which prejudices Plaintiffs' case. Discussing the widespread failures, understaffing and underfunding which creates the breakdown in responding to medical requests is the only way that this case can be tried. Defendants are simply attempting to have this Court enter an order and begin creating a rule that the Seventh Circuit in *Thomas* has already rejected.

13

Furthermore, Plaintiffs' would be prejudiced by a delay in discovery as memories fade and detainees are released and become more difficult to locate. *See e.g.*, *Krueger Intern., Inc.*, 647 F.Supp.2d at 1042 ("To stay all proceedings. . . . will often indefinitely delay the plaintiff's case and risk prejudice as memories fade and potential evidence is lost.")

Thus, because the discovery is relevant against, or on behalf, of the officers' claims and defenses, as well as the County, because the case would proceed against the County regardless of what occurs with the individual officers and because of the prejudice to plaintiffs if discovery was stayed, the Court should Deny defendants' motion to stay *Monell* discovery.

Respectfully submitted,


*s/Heidi Karr Sleper*

_____

Counsel for Plaintiffs

*Electronically filed November 29, 2010*


Heidi Karr Sleper (ARDC# 6287421)
KURTZ LAW OFFICES, LTD.
32 Blaine Street
Hinsdale, Illinois 60521
Phone: 630.323.9444
Facsimile: 630.604.9444
E-mail: hsleper@kurtzlaw.us

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies and states that the attached documents were served on the designated attorneys by electronic service via the Court's ECF System on November 29, 2010.

MICHAEL GALLAGHER  [michael.gallagher@cookcountyil.gov]

*s/Heidi Karr Sleper*

_____

*Electronically filed November 29, 2010*

15