IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH DEMOUCHETTE, JR.,          )
et al.,                          )
                                 )
            Plaintiffs           )     Case No. 09 C 6016
                                 )
      v.                         )     Judge John J. Tharp, Jr.
                                 )
SHERIFF OF COOK COUNTY           )     Magistrate Judge Arlander Keys
THOMAS DART, in his official     )
capacity, et al.,                )
                                 )
            Defendants.          )


**MEMORANDUM OPINION AND ORDER**

On September 28, 2008, Joseph Demouchette, a pre-trial
detainee, hung himself in a jail cell operated by the Cook County
Department of Corrections ("CCDC"). His mother and his minor
children (the "Plaintiffs") sued the Sheriff of Cook County and
numerous individual defendants, alleging claims under 42 U.S.C.
§1983, as well as various state law claims, including claims of
wrongful death, intentional infliction of emotional distress, and
negligence, a survivor action and an indemnification claim.

The case is before the Court on Defendants' Joint Motion to
Exclude the Testimony of Robert Greifinger, M.D. and Thomas F.
Norris [151]. For the reasons explained below, the motion is
denied.

Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiffs have named Robert Greifinger, M.D. and Thomas Norris to provide opinion testimony and expert report. Mot. at Exs. 2-4. Defendants argue that the methodology used to formulate the opinions is flawed and based upon nothing more than speculation and conjecture, and that Dr. Greifinger and Mr. Norris's opinions are irrelevant at this stage in the litigation. Therefore, Defendants request that the Court exclude the testimony of Dr. Greifinger and Mr. Norris.

Plaintiffs respond that both Dr. Greifinger and Mr. Norris are sufficiently qualified in their respective fields, utilized reliable methodologies, and offer relevant opinions that will assist the trier of fact. Plaintiffs request that the Court deny Defendants' motion.

## Factual Background

The Amended Complaint alleges that Mr. Demouchette, a heroin addict who had previously been held several times at the CCDC on charges related to his illegal drug use, was arrested on September 27, 2008 and placed in the jail as a pretrial detainee. Amend. Compl. at ¶¶ 12-14. In contrast to his prior detentions, Mr. Demouchette was arrested on this occasion for domestic battery. Upon his arrival, Mr. Demouchette underwent a medical screening by Cermak Health Services ("Cermak"), which operates medical services at the CCDC for Cook County. The medical intake

form shows that Mr. Demouchette admitted to using tobacco, but answered "no" to other questions involving his substance use, including alcohol, methadone, and all illicit drugs. Mot. at Ex. 6. Cermak also undertook a Brief Primary Psychological Screening of Mr. Demouchette, in which he again denied using drugs, feeling suicidal, or having attempted suicide in the past.

Mr. Demouchette was subsequently placed in the general population of the CCDC in Tier 2-H with cellmate Adair Davidson. According to Mr. Davidson's later statement, Mr. Demouchette was experiencing both physical and emotional distress when he was placed in Tier 2-H on the evening of September 27. For example, Mr. Demouchette expressed concerns about relations with his girlfriend and told Mr. Davidson the next morning that he had even considered committing suicide because of tensions in his relationship. Mr. Demouchette was also visibly ill and vomited two or three times when he first arrived in Tier 2-H. He mentioned to Mr. Davidson that he was "dope sick" because for the past twenty-four hours he had been off heroin, a drug which Mr. Demouchette allegedly took in large quantities, and he told Mr. Davidson that his addiction had also contributed to his suicidal feelings. Amend. Compl. at pp. 6-7.

According to the Amended Complaint, Mr. Demouchette tried to attract the attention of guards throughout the night of September 27, to no avail, and the next day, he began telling Mr. Davidson

that he planned to "fake hang" himself in order to get medical attention at the Cermak Hospital. Amend. Compl. at ¶¶ 20-22. Mr. Davidson asked him to wait until the correctional officer on duty returned to the area, but Mr. Demouchette tied his bed sheet to a window, placed the sheet around his neck, and began to act on his threat. Agitated by what he was witnessing, Mr. Davidson called out to other inmates and the correctional officer on duty for help, but he did not personally interfere for fear of creating more harm than good. By the time the CCDC officer arrived, Mr. Demouchette had already become unconscious, and his face and fingernails had turned pale. Paramedics arrived on the scene and began transporting Mr. Demouchette to Mt. Sinai Hospital, where he was pronounced dead. *Id*. at ¶¶ 31-36. An autopsy performed the following day at the Cook County Medical Examiner's Office confirmed that Mr. Demouchette's death was a suicide caused by hanging. *Id*. at ¶ 37.

## Standard of Review

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and by the principles announced in *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 provides that if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," a witness who is "qualified as an expert by

4

knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise."

Under *Daubert* and *Kumho*, the Court is required to act as "gatekeeper," admitting only that expert testimony that passes a "flexible" test involving the consideration of a variety of factors intended to gauge the reliability and relevance of the evidence. For expert testimony to be admitted, the movant must establish that the expert testimony is both reliable and helpful in assisting the trier of fact in understanding the evidence or determining a fact at issue in the case. *Bullock v. Sheahan*, 519 F. Supp. 2d 760, 761 (N.D. Ill. 2007).

"The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1150 (N.D. Ill. 2001)). The Court must also keep in mind that the question of whether the expert is credible or whether the theories being applied by the expert are correct, is a "factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000)(citing *Walker v. Soo Line R.R.*, 208 F.3d 581, 589-90 (7th Cir. 2000)).

## Discussion

### I.  Dr. Greifinger

Dr. Greifinger is a licensed physician.  He has practiced in the field of correctional medicine for the past 20 years.  From 1987-1995, he worked at the New York City's jail and then was the Chief Medical Officer for the New York State Department of Correctional Services.  Mot. at Ex. 3.  From 1995 to the present, Dr. Greifinger has consulted in the design, management, and quality improvement programs for correctional health care systems.  *Id.*  At the request of Plaintiffs, Dr. Greifinger has provided an initial report and a supplemental report setting forth his background, the materials he has reviewed relevant to this case, his findings, conclusions and opinions.  Mot. at Exs. 3 and 7.

In this case, Dr. Greifinger opines that there was deficient safety and supervision, deficient screening and lack of privacy, deficient emergency response time, excessive lock down time, and deficient mental health care at the CCDC, which increased the risk of Mr. Demouchette's successful suicide.  Mot. at Ex. 3, p. 5 and Ex. 5 at 57:17-58:7; 101:14-102:6; 104:16-106:21.

Defendants set forth three arguments as to why Dr. Greifinger's expert testimony should be excluded: (1) Dr. Greifinger is not qualified to offer expert testimony regarding security issues; (2) Dr. Greifinger's opinions and the

methodology used in formulating them are not reliable; and (3) Dr. Greifinger's opinions are not relevant.

## A.   Dr. Greifinger's Qualifications

For an expert's testimony to be admissible, the witness must be qualified in the relevant field.  *Smith*, 215 F.3d at 718.  A witness is qualified as an expert if he has sufficient "knowledge, skill, experience, training, or education" relating to the subject matter of his or her testimony.  Fed. R. Evid. 702.

Defendants argue that while, Dr. Greifinger has been found to be an expert in correctional health care on numerous occasions, he is not qualified to opine on security issues, and thus his opinions on those issues should be excluded.  Mot. at p. 6.  Plaintiffs respond that Dr. Greifinger does have sufficient knowledge, skill, experience, training, or education to offer the opinions that he makes.  Plaintiffs argue that Defendants ignore Dr. Greifinger's nearly 20 years of experience in the field. Resp. at p. 4.  In support, Plaintiffs note that Dr. Greifinger has served as the Deputy Commissioner/Chief Medical Officer of the New York State Department of Correctional Service for nearly six years, where he oversaw the medical care of more than 68,000 inmates and was "responsible for inmate safety, program, and security" in a policy and operational decision making role.  *Id.*; Mot. at Ex. 3.  In addition, from 1995 to the present, Dr.

Greifinger has consulted on the design, management, operations, quality improvement, and utilization management for correctional health care systems across the country. *Id*. Plaintiffs list additional relevant experience that Dr. Greifinger has in their response brief, including his position as Correctional Healthcare Monitor for the courts and his relevant publications. Resp. at pp. 3-6.

After reviewing Dr. Greifinger's curriculum vitae, reports, and deposition testimony, the Court finds that Dr. Greifinger has sufficient knowledge, skill, experience, training, and education relating to the subject matter in his opinions regarding security issues. Therefore, Defendants' request to exclude this testimony is denied.

**B.   Reliability of Dr. Greifinger's Opinions**

Once a court has determined that an expert is sufficiently qualified, it must then examine the expert's methodology. *Smith*, 215 F.3d at 718. Defendants argue that Dr. Greifinger's opinions are unreliable, because he does not state what standards he relies upon, his opinions are conclusory, not supported by evidence, and speculative and that the materials he cites as the basis for his opinions are also unreliable. Mot. at pp. 6-16.

**1.   Methodology**

Defendants argue that Dr. Greifinger's methodology is flawed in that he failed to identify the standards or process he relied

upon in coming to his conclusions.  Mot. at pp. 6-7.  Plaintiffs

state that Dr. Greifinger is not providing scientific opinions;

he is opining on whether the Defendants met the standard of care

based on his extensive knowledge, experience, qualifications, and

training.  Rule 702 specifically contemplates that, as in this

case, not all expert testimony will be scientific.  See Fed. R.

Evid. 702, advisory committee notes (2000 amendment) ("Some types

of expert testimony will not rely on anything like a scientific

method ... Nothing in this amendment is intended to suggest that

experience alone – or experience in conjunction with other

knowledge, skill, training or education – may not provide a

sufficient foundation for expert testimony.  To the contrary, the

text of Rule 702 expressly contemplates that an expert may be

qualified on the basis of experience." )

Defendant's acknowledge that Dr. Greifinger is not a

"scientific expert" under *Daubert*.  However, they argue that Dr.

Greifinger's report and testimony do not meet the standard for

non-scientific experts set forth by the Seventh Circuit: "that

experts' work is admissible only to the extent it is reasoned,

uses the methods of the discipline, and is founded on data.

Talking off the cuff - deploying neither data nor analysis - is

not an acceptable methodology."  *Lang v. Kohl's Food Stores,

Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).  "If the witness is

relying solely or primarily on experience, then the witness must

explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, advisory committee's notes (2000 amendment); *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). Defendants argue that, while "Dr. Greifinger uses some data, he has come up lacking as to the reasons." Reply at p. 5.

Plaintiffs respond that Dr. Greifinger employed a reliable methodology because he reviewed copious documents and applied his specialized knowledge and extensive experience and research, which has made him knowledgeable on the standards of care in correctional institutions, and which are applicable to the facts of this case. Resp. at p. 8. According to his initial expert report, Dr. Greifinger reviewed, among other documents, numerous depositions, Mr. Demouchette's medical records, Mr. Demouchette's medical records from previous detainments at the Cook County Jail, photographs and video of the jail, Cook County General Orders and policies, the Cook County Sheriff's Office's investigation records, as well as the U.S. Department of Justice finding letter and the MGT of America Report, which also reviewed and analyzed whether the Cook County Jail, its management staff, and its officers were meeting the standards of care. Mot. at Ex. 3, pp. 2-3. Dr. Greifinger then applied his practical knowledge

and experience in the field of correctional medical care, as well as his extensive research and publications, to the facts of this case in order to reach his opinions in this case. *Id.*; Mot. at Ex. 5.

Dr. Greifinger also testified that he relied on studies by other experts in the field in formulating his opinions, including a chapter in his book authored by Defendants' expert Lindsay Hayes. Mot. at Ex. 5, p. 19:3-12. Dr. Greifinger also relied on studies by Mr. Hayes regarding the risks of drug withdrawal. *Id*. at p. 27:1-10. Dr. Greifinger's opinions are reliable as he reviewed the medical records, policies, and investigation documents, among others, and applied his specialized knowledge of correctional medical care, his extensive practical experience in the field, which includes promulgating and implementing appropriate standards of care for health care systems in correctional facilities, as well as peer reviewed publications by himself and other experts to the facts of this case.

Defendants also argue that Dr. Greifinger did not support his opinions with the proper correctional health care standards. Mot. at pp. 6-7. Plaintiffs respond that Dr. Greifinger's opinions are based on the applicable standard of care "based on national correctional standards and standard correctional practice." Resp. at p. 9. Plaintiffs add that, though the standards referred to by Defendants are helpful, they are

voluntary accreditation standards and the Cook County Jail is not accredited. *Id.* at p. 10. Plaintiffs point out that Dr. Greifinger is familiar with the National Commission on Correctional Health Care accreditation standards, but was never questioned on them during his deposition. *Id.* Plaintiffs further argue that "there is not an applicable standards 'manual'" that applied to the Cook County Jail, nor does Dr. Greifinger need to cite to a manual chapter and verse." Resp. at p. 9. According to Rule 702, as a non-scientific expert, Dr. Greifinger is not required to cite specific standards he based his opinions on and Defendants supply persuasive law that Dr. Greifinger is required to cite to different or additional national correctional standards. Reply at pp. 6-7.

Defendants cite case law to argue that Dr. Greifinger's opinions should be excluded because they are not properly grounded, well-reasoned, and speculative. However, the Court finds that these cases are distinguishable. First in *Lang v. Kohl's Food Stores*, Inc., the Seventh Circuit specifically pointed out that the lower court's decision to exclude the consultant's opinions, in a class action employment case, was proper because the consultant based his opinions on nothing more than a job description that was not correct and did not consider actual job duties, the actual facts in the case. 217 F.3d at 924. In addition, when asked during his deposition to support

his opinions, his responses included: "I have no idea" and "I couldn't tell you." *Id.* This is not the case with Dr. Greifinger, who was able to support his opinions with his knowledge, experience, and the facts in this case (which Defendants do not allege were misinterpreted by Dr. Greifinger). In their Reply brief, Defendants cite *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d at 419, to argue that, despite having "extensive experience in correctional healthcare," that alone does not validate Dr. Greifinger's opinions. Reply at p. 7. In *Zenith*, the Seventh Circuit upheld the decision to exclude an expert's opinions regarding lost profit, because the expert invoked his own experience, rather than analytic strategies widely used by specialists in his area. *Id.* As discussed above, Dr. Greifinger does not rely on his curriculum vitae alone in arriving at his findings, and as a non-scientific expert, is not required to base his opinions on a certain set of standards. Dr. Greifinger cites other experts in correctional security, his experiences, and his own publications based on data.

On the subject of the material relied upon by Dr. Greifinger, Defendants argue that Dr. Greifinger improperly relied on the Department of Justice findings letter dated July 11, 2008. Mot. at pp. 12-14. The DOJ findings letter lists violations of the Cook County Jail from 2008. *Id.* In their response brief, Plaintiffs explain that Dr. Greifinger was

actively involved in that Department of Justice investigation of the Cook County Jail. Resp. at pp. 4-5. During that investigation, Dr. Greifinger conducted interviews and had conversations with Cermak and Sheriff's Office staff, as well as detainees. *Id.* at pp. 5-6. In the spirit of Federal Rule of Evidence 702, experts are to rely on their applicable experiences in drawing their conclusions. That is what Dr. Greifinger is doing in this case. As the gatekeeper here, the Court is to consider the methodology and ensure that the expert has taken into account the facts in this case when making his conclusions and not relied on his outside experiences alone to draw conclusions. As discussed above, the Court finds Dr. Greifinger's methodology reliable. Therefore, Dr. Greifinger's reliance on his experiences from the 2008 investigation is not a basis for excluding his opinions.

The Court finds that a person with Dr. Greifinger's experience, combined with his review of the records and his reasoning and application of the data, accredited standards, and facts, presents a sound methodology by which Dr. Greifinger formed his opinions. Defendants' arguments that Dr. Greifinger's methodology in forming his opinions is not supported by evidence and is speculative fails. In arguing that Dr. Greifinger's methodology is improper, Defendants raise specific findings and opinions which they challenge with facts or other data or expert

opinions.  However, these are not bases to exclude testimony, but
instead, challenges to cross examine Dr. Greifinger on during
trial.  An expert must supply the underlying basis for his
opinion to enable both his opponents and the Court to evaluate
the proffered opinion.  *Chicago Joe's Tea Room, LLC v. Village of
Broadview,* No. 07 C 2680, 2008 WL 4287002, at *10 (N.D. Ill.
Sept. 11, 2008).  Dr. Greifinger has done that in this case.
Whether Dr. Greifinger's opinions or his interpretation of the
facts are correct are for the jury's determination. *Smith*, 215
F.3d at 718.

### 2.  Conclusory Opinions

Next, Defendants argue that Dr. Greifinger's opinions are
conclusory in nature.  Mot. at pp. 8-10.  "An expert who supplies
nothing but a bottom line supplies nothing of value to the
judicial process." *Wendler & Ezra, P.C. v. Am. Int'l Group, Inc*.,
521 F.3d 790, 791 (7th Cir. 2008)(*quoting MidState Fertilizer Co.
v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)).
Specifically, Defendants argue that the following opinions of Dr.
Greifinger are conclusory and not based on the medical evidence:
"[a] more complete medical and mental health evaluation, done in
privacy, might have revealed [Mr. Demouchette's] risk of
withdrawal.  More likely than not, treatment of his withdrawal
would have prevented suicide."  Mot. at p. 8.

After reviewing Dr. Greifinger's initial report, the Court

15

recognizes that some of Dr. Greifinger's conclusions set forth in the "opinions and conclusions" section of the report, when read alone, may sound conclusory. Mot. at Ex. 3, p. 5-6. However, when the report is read in its entirety and with Dr. Greifinger's testimony from his deposition, the Court finds that Dr. Greifinger's methodology was proper: he reviewed the facts of the case, applied his experience and knowledge, and made determinations based on that analysis.

Even in arguing that Dr. Greifinger's opinions are conclusory, Defendants diminish their own argument. Defendants state that the same medical evidence considered by Dr. Greifinger, in coming to his opinion regarding the use of prior medical records during intake screening and the quality of the intake assessment procedure applied in this case, can be used to challenge that opinion as it shows that inmates have a tendency to lie during intake screening. Mot. at p. 9. Therefore, Defendants recognize that Dr. Greifinger did apply the facts in this case when developing his opinions and considering the comparative quality of the procedure used in this case, contradicting that the opinion is conclusory. Defendants' argument that the medical evidence, in their view, refutes Dr. Greifinger's conclusions is an argument for trial to be left for the jury to decide.

**C.    Dr. Greifinger was Stricken as an Expert Once Before**

Next, Defendants argue that the Court should exclude Dr. Greifinger's testimony because he was disqualified in a previous Northern District of Georgia case.  Mot. at pp. 15-16; *See Dukes v. Georgia*, 428 F.Supp.2d 1298 (N.D. Georgia 2006).  Defendants argue that *Dukes* is similar and should be taken into consideration in this case.  The district court in *Dukes* excluded Dr. Greifinger's opinions finding they were unreliable and not relevant.  *Id.* at 1314-15.

In response, Plaintiffs point out that Dr. Greifinger has testified as an expert in numerous cases.  Resp. at pp. 18-19.  The Court does note that *Dukes* is distinguishable from the case at hand.  However, the Court need not even consider *Dukes*.  The District Court applies the *Daubert* analysis to evaluate an expert on a case by case basis and is not convinced to depart from that analysis by the finding of other Courts.  *See Wilson v. Maicopa County*, 2007 WL 686726, at *11(D.AZ March 2, 2007).  The Court finds Defendants' argument regarding *Dukes* unpersuasive.

**D.    Dr. Greifinger's Declaration**

In its response brief, to refute the exhaustive challenges Defendants make against Dr. Greifinger's testimony, Plaintiffs attach a declaration signed by Dr. Greifinger which addresses some of the specific accusations that Defendants make in their motion.  Resp. at Ex. B.  Then, in their reply brief, Defendants

argue that this declaration should be stricken and barred as it has given Dr. Greifinger another opportunity to explain the basis for his opinions.  Reply at pp. 14-15.  Defendants' argument fails.  Defendants cannot challenge the testimony of Dr. Greifinger and then seek to bar his response to the challenges. The declaration directly responds to Defendants' arguments and is not used, as Defendants accuse, as a supplemental report.

## II.  **Thomas F. Norris**

Defendants argue that the opinions of Mr. Norris should be excluded, because Mr. Norris is unqualified and his irrelevant opinions are based on an unreliable methodology.  Mot. at pp. 17-19.

### A.  **Mr. Norris's Qualifications**

First, Defendants argue that "Mr. Norris is entirely unqualified to provide an expert opinion in the field of correctional security."  Mot. at p. 17.  Defendants argue that, since no court has qualified Mr. Norris as an expert and he has only provided one other expert report, the Court should be precluded from finding that he possesses the necessary qualifications to testify as an expert in this case.  *Id.* However, the issue of whether a court has previously qualified Mr. Norris as an expert is irrelevant to a determination of whether he has the necessary knowledge, skill, experience, training, or education to qualify him as an expert under Rule

702. *See Smith*, 215 F.3d at 718; *see also Catapult Communications Corp. v. Foster*, 2010 WL 659072, *2 (N.D. Ill. Feb. 19, 2010) ("The mere fact that [a proposed expert] never has been *retained* as an expert is irrelevant. By that logic, *no witness* could ever qualify as an expert for the first time because that would require being retained *previously* as an expert.")(emphasis in original).

Plaintiffs argue that Mr. Norris has sufficient practical experience, training, knowledge, and education to qualify as an expert on the issue of correctional security and suicide prevention. Resp. at pp. 20-21. Specifically, Plaintiffs point to Mr. Norris' forty years of experience in the field of corrections: Mr. Norris's career with the Federal Bureau of Prisons lasted nearly thirty years and included employment as a correctional officer, correctional supervisor, and manager of correctional security components. Moreover, for the past nine years, Mr. Norris has served as a consultant in the field of correctional security and suicide prevention. *Id.* In addition, Mr. Norris has a Master's Degree in correctional administration, sits on a number of national boards and organizations of correctional professionals, and is a consultant regarding corrections. *Id*; Mot. at Ex. 13, pp. 5-9. After reviewing Mr. Norris' *curriculum vitae* and the portions of his deposition regarding his education and experience, the Court finds that Mr.

Norris has sufficient experience, training, knowledge, and education under Rule 702 to opine regarding issues of correctional security in this case.  Mot. at Exs. 4, 13.

Specifically, Defendants argue that Mr. Norris's experience is inapplicable to the case at hand, because his work experience was at a Federal Corrections Institution that was "minimum security" and thus cannot opine in this case on "the most violent detainees imaginable in the nation's largest single-site Jail." Mot. at p. 17.  However, Mr Norris's experience is not limited to his work at the Federal Corrections Institution in Lexington, Kentucky from 1974-1985/1986.  The work he did for the Federal Corrections Institution is one of many positions he has held throughout his 40-year career in the field of corrections.  Mot. at Ex. 5.  Mr. Norris also testified that he is in institutions on a regular basis conducting audits, visits, and observing how they operate for a variety of reasons.  Mot. at Ex. 13, 31:9-13. Moreover, as to his employment with the Federal Corrections Institution, Mr. Norris testified that the facility housed a broad range of criminals, including murderers.  *Id*. at 32:18-21.

In addition, Mr. Norris has explicitly stated that he took into account the size and inmate population of Cook County Jail when formulating his opinions. *Id.* at p. 33:2-18.  Therefore, because Defendants argument is without merit, and because Mr. Norris possesses the required knowledge, experience, training and

education in the field of correctional security and issues relating to providing adequate medical care and suicide prevention, he is qualified to render the opinions he offers in this case.

### B. Reliability of Mr. Norris's Opinions

Defendants argue that Mr. Norris's opinions are unreliable and should be excluded because they are based on an improper standard. Mot. at pp. 18-19. First, Defendants argue, in one sentence, that Mr. Norris's testimony should be excluded because, in his report, he states that his "findings can only be considered preliminary." Mot. at p. 18. However, Mr. Norris clearly explained during his deposition that he left this caveat in his report because Defendants had not produced training materials that he felt were necessary to fully determine individual liability. Mot. at Ex. 13, p 62-63. Based on the facts and information that was provided to Mr. Norris, he developed his opinions. *Id.* There is nothing about Mr. Norris stating that his findings are preliminary that means that Mr. Norris relied on an improper standard. In fact, as Plaintiffs set forth, "experts across the country generally state that their findings are preliminary or that they reserve the right to supplement to their opinions if additional information becomes available." Resp. at p. 24. Defendants' argument fails. Mr. Norris's testimony will not be excluded on this argument.

Second, Defendants argue that Mr. Norris's testimony should be barred, because Mr. Norris "applied a best practice standard as opposed to the appropriate deliberate indifference standard" arguing that "Mr. Norris would find the individual officers and County Defendants liable for failing to do everything in their power to prevent Demouchette's suicide." Mot at p. 19. Defendants base this argument on the following question and answer from Mr. Norris's deposition:

> Q. So in your expert opinion an officer or the institution is liable if they haven't done everything they could possibly do in order to prevent a suicide.

> A. That's their job.

Mot. at Ex. 13, p. 76.

Plaintiffs do not dispute that the appropriate standard here is deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Instead, Plaintiffs argue that Mr. Norris does not apply a "best practice standard" as to the opinions he rendered in this case, as is reflected in his report and supported by his deposition testimony. Resp. at p. 24. The Court agrees with Plaintiffs' position and Defendants do not provide any other opinions in which they allege Mr. Norris applied the best practices standard.

As for the question and answer quoted above, Defendants pull those two lines from a heated and argumentative portion of the deposition in which Defendants' attorney was challenging Mr.

Norris with information that had not been previously disclosed in this case. Mot. at Ex. 13, 74:23-76:20. Therefore, the Court finds Defendants' argument unpersuasive. Defendants attempt to trip Mr. Norris up on word choice in order to show that his methodology is unreliable fails.

Third, Defendants argue that Mr. Norris's testimony should be excluded, because he only specifically mentions the American Correctional Association ("ACA"), a national correctional organization that provides policy recommendations and voluntary accreditation, once. Mot. at pp. 18-19. Defendants also claim Mr. Norris miscites an ACA standard. *Id.* In response, Plaintiffs first clarify which ACA standard Mr. Norris relied on in his report. Resp. at pp. 23-24. Then, Plaintiffs state that Mr. Norris "testified repeatedly regarding his reliance on the standards promulgated by the Commission on accreditation for Adult Local Detention Facilities to reach his opinions and conclusions, among nationally recognized standards based on his experience, qualifications, and training. *Id.* at p. 23; see Mot. at Ex. 12, pp. 106:12-109:15, 117:12-118:18; 121:24-123:10. As discussed above, citing specific standards is not a requirement of a non-scientific experts under Rule 702. Instead, the experts' work is admissible to the extent that it is reasoned, uses the methods of the discipline, and is founded on data. *Lang,* 217 F.3d at 924. Defendants do not argue that Mr. Norris does

not meet this standard.  Defendants' motion to exclude Mr.
Norris's testimony based on his methodology being flawed is
denied.

**III. Relevancy of Dr. Greifinger and Mr Norris's Opinions**

Under the second prong of the *Daubert* analysis, the proposed
expert testimony also must be relevant.  509 U.S. at 591.  The
testimony must "assist the trier of fact to understand the
evidence or to determine a fact in issue." *Id.*  " Expert
testimony which does not relate to any issue in the case is not
relevant and, ergo, non-helpful." *Id*.

Defendants argue that the "specific question" at this stage
in the litigation, as the case was bifurcated, is "whether the
individual Officers were deliberately indifferent to
Demouchette's suicide, not whether the County Defendants should
have instituted certain policies that could have prevented that
suicide."  Mot. at p. 3.  Therefore, Defendants argue that Dr.
Greifinger and Mr. Norris's opinions regarding the customs,
practices, or policies of the County Defendants are not relevant
and should be excluded.  *Id.* at p. 5.  Since Defendants make the
same relevancy argument against both Dr. Greifinger and Mr.
Norris, the Court will consider excluding both experts' testimony
based on relevancy together here.

Plaintiffs disagree with Defendants' description of the case
and respond that there are many "specific questions" at this

stage of the litigation, including, but not limited to: "did individual jail officials know of or participate in creating systemic inadequate conditions at the jail that prevented officers from providing adequate medical care and prompt medical response; did the individual officers fall below the standard of care by ignoring Mr. Demouchette's obvious signs of medical need including going through withdrawal symptoms and the need for immediate CPR; did the individual officers fall below the standard of care by not properly monitoring Mr. Demouchette; did the individual officers fall below the standard of care by ignoring calls for help by Mr. Demouchette; did the individual Defendants' actions and inactions cause Mr. Demouchette's death as well as needless pain and suffering." Resp. at p. 3. Plaintiffs argue that Defendants are attempting to narrowly define the determinations that the jury must make.

Based on their view of the scope of the case at this point in litigation, Defendants argue that all of Dr. Greifinger and Mr. Norris' opinions regarding the County Defendants' alleged customs, policies and practices are irrelevant, and must be excluded. Mot. at p. 16. Defendants specifically point out that "instead of providing an opinion that the individual Officers knew or should have known that Demouchette was suicidal, Mr. Norris opines that 'based on my limited review of the provided materials, that Mr. Demouchette's death may have been preventable

had certain standard correctional practices been in place.'"
Mot. at p. 17.  Plaintiffs respond that, Mr. Norris actually
opines that he has reviewed "sufficient evidence in my mind to
indicate that the correctional and medical staff knew, or should
have known, that there was a real possibility that any inmate
admitted and housed in these circumstances, could experience
serious trauma or death," which is relevant against the
individual Defendants.  Mot. at Ex. 4.

Plaintiffs acknowledge that they do not intend to introduce
Monell issues in the trial against the individual Defendant
officers based on the Court's bifurcation order.  However, they
add that the Cook County Jail's policy and practice of cross-
watching is absolutely relevant to the issue of whether
individual jail officials knew of or "participated in creating
systemic inadequate conditions at the jail."  Resp. at p. 3.
Plaintiffs argue that both Dr. Greifinger and Mr. Norris opinions
that Defendants' utilization of cross-watching was a systemically
inadequate condition that severely limited the individual
officer's opportunities to properly observe and/or respond to a
detainee's serious medical conditions.  *Id.*

In this case, the issues against the individual Defendants
and against the County are closely related and there may be
overlap.  Therefore, the Court finds that Dr. Greifinger and Mr.
Norris's opinions may be relevant now and during the Monell stage

of the case and cannot be excluded at this point in the litigation, as they will assist the trier of fact to understand the evidence or to determine a fact in issue. This ruling in no way limits Defendants from objecting to the experts' testimony at trial on the grounds of relevancy.

### **Conclusion**

For the reasons set forth above, Defendants' Joint Motion to Exclude the Testimony of Robert Greifinger, M.D. and Thomas F. Norris [151] is denied. The case is set for a status hearing on Friday, January 4, 2013.

Date: December 14, 2012

E N T E R E D:

_____
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT